**Exhibit A**

## CONTINGENT FEE ENGAGEMENT AGREEMENT

**THIS CONTINGENT FEE ENGAGEMENT AGREEMENT** (the "Agreement"), made and entered into as of this 30th day of June, 2006, is by and between Montage Partners, LLC, a Nevada limited liability company ("Montage"), and Primary PDC, Inc., a Delaware corporation (the "Company").

### RECITALS

A.      Reference is made to that certain Second Amended and Restated Asset Purchase Agreement, dated as of July 3, 2002 (the "Asset Purchase Agreement"), by and among OEP Imaging Corporation, a Delaware corporation ("OEP"), and the Company (f/k/a Polaroid Corporation). (Capitalized terms used herein but not defined herein shall have the meanings assigned to such terms in the Asset Purchase Agreement.);

B.      Reference is also made to that certain Third Amended Joint Plan of Reorganization of Primary PDC, Inc. and its Debtor Subsidiaries, dated as of November 13, 2003 (the "Plan of Reorganization"), in the form filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

In accordance with the terms and subject to the conditions set forth in the Asset Purchase Agreement, the Company sold, conveyed, transferred, assigned and delivered to OEP substantially all of the Company's properties and assets (the "Sale Assets"), excluding the assets and properties set forth on Exhibit A hereto and as may otherwise have been excluded pursuant to the terms of the Asset Purchase Agreement (the "Retained Assets");

C.      Montage has advised the Company that it believes that: (i) included within the Retained Assets are certain claims, causes of action, rights of recovery and demands that may inure to the benefit of the Company, as more particularly described in Exhibit B hereto (the "Specified Assets"); and (ii) to date, the Company has taken no action to collect, compromise, adjust, pursue, prosecute or otherwise realize upon the Specified Assets; and

D.      Montage has proposed to locate, and to collect, compromise, adjust, pursue, prosecute or otherwise realize upon, the Specified Assets through commercial, legal or judicial process. The Company has requested that Montage take such action as it deems appropriate to collect, compromise, adjust, pursue, prosecute or otherwise realize upon the Specified Assets on behalf of the Company, in accordance with the terms and subject to the conditions set forth below.

**NOW, THEREFORE,** in consideration of the foregoing and the representations, warranties, conditions, covenants and agreements hereinafter set forth, the parties hereto agree as follows:

1.      *Identification of Specified Assets and Engagement of Montage.*

(a)     Montage shall provide, in writing, a detailed description of the Specified Assets, which detailed description shall be appended as <u>Exhibit B</u> to the execution copy of this Agreement and shall set forth Montage's good faith estimate of the gross recovery that may be realized by the Company with regard to each Specified Claim as a result of the collection, compromise, adjustment, pursuit, prosecution or other realization upon such Specified Asset. Montage shall provide such detailed description to the Company within five business days after it receives written notice that the Bankruptcy Court or other court of competent jurisdiction has entered a final order approving this Agreement. In the event Montage fails to timely provide such detailed description, then this Agreement shall be null and void and neither party shall have any further obligation to the other hereunder.

(b)     Following delivery to the Company of <u>Exhibit B</u> hereto, the Company may, in its sole discretion, determine whether to engage the services of Montage as an independent contractor to locate, and to collect, compromise, adjust, pursue, prosecute or otherwise realize upon, the Specified Assets for the benefit of the Company, whether through commercial, legal or judicial process. The election by the Company concerning whether or not to engage Montage shall be made promptly after the Company's receipt of <u>Exhibit B</u> hereto from Montage.

(c)     If the Specified Assets, as so identified by Montage, are Excluded PDC Assets, as defined in <u>Section 2</u> of this Agreement, and the Company shall advise Montage, in writing, that it declines to engage Montage to locate, and to collect, compromise, adjust, pursue, prosecute or otherwise realize upon, the Specified Assets for the benefit of the Company then, in such event, the Company shall have no further obligations under this Agreement and may proceed independently to locate, and to collect, compromise, adjust, pursue, prosecute or otherwise realize upon, the Specified Assets for its own benefit without liability of any kind to Montage.

(d)     If the Specified Assets, as so identified by Montage, are not Excluded PDC Assets, as defined in <u>Section 2</u> of this Agreement, the Company shall advise Montage, in writing, that it declines to engage Montage to locate, and to collect, compromise, adjust, pursue, prosecute or otherwise realize upon, the Specified Assets for the benefit of the Company; <u>provided however</u>, in the event the Company subsequently takes action to collect, compromise, adjust, pursue, prosecute or otherwise realize upon the Specified Assets, then the Company shall deliver to Montage 40% of the recovery realized by the Company as a result of any such action, net of any costs and expenses, including, without limitation, legal fees and expenses, incurred by the Company in connection therewith.

(e)     Any third parties that may be retained by Montage in any way related to Montage's efforts to locate or collect, compromise, adjust, pursue, prosecure or otherwise realize upon the Specified assets shall be acceptable to the Company in its sole discretion. Any order that may be entered by the Bankruptcy Court approving this Agreement shall provide that (i) any such third parties shall not be serving as agents for the Company, (ii) any such third parties shall be retained solely by Montage, (iii) Montage shall have sole responsibility for compensating and reimbursing any such

third parties and (iv) the Company shall have no liability whatsoever to any such third parties in connection with any matter arising out of or related to this Agreement.

    2.    ***Excluded PDC Assets***. In no event shall the Specified Assets include or consist of any of the following assets (the "Excluded PDC Assets"):

        (a)    information solely in the public domain;

        (b)    any abandoned or unclaimed properties belonging to the Company and held by state authorities under any abandoned or unclaimed property, escheat or similar statutes;

        (c)    any tax refunds owed to the Company by the Commonwealth of Puerto Rico or any political subdivision thereof;

        (d)    assets which, if collected, compromised, adjusted, pursued, prosecuted or otherwise realized upon may result in adverse tax consequences to the Company or any person that shall be entitled to receive any assets of the Company as a result of the liquidation of the Company pursuant to the terms of the Plan of Reorganization;

        (e)    assets which, if collected, compromised, adjusted, pursued, prosecuted or otherwise realized upon may result in adverse tax consequences to Polaroid Holding Company, a Delaware corporation ("Polaroid Holding Company"), or any of its direct or indirect subsidiaries or any of its affiliates or shareholders;

        (f)    creditor claims;

        (g)    causes of action against Polaroid Holding Company, or any of its direct or indirect subsidiaries or any of its affiliates or shareholders;

        (h)    preference or other avoidance actions;

        (i)    escrowed funds, collateral, or prepaid accounts;

        (j)    the Sale Assets; or

        (k)    assets due, or that may become due, under insurance policies, surety bonds or similar obligations and instruments, whether or not currently in force.

    3.    ***Montage Commission***. In consideration for the location by Montage of the Specified Assets and its collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified Assets through commercial, legal or judicial process for the benefit of the Company (the pursuit and prosecution of which shall be in the sole and reasonable discretion of Montage), Montage shall receive a commission equal to 40% of the gross recovery resulting from the collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified Assets (the "Commission"). Montage shall remit to the Company the total proceeds of any such gross recovery immediately upon the collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified

Assets by Montage. Following its receipt thereof, the Company shall forward to Montage 40% of the total proceeds of any such gross recovery.

Montage shall bear all collection costs, finders' or other fees, charges, commissions, or expenses attendant to the location, collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified Assets. Montage shall further bear all counsel fees and litigation expenses, if any, attendant to the location, collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified Assets ("Litigation Costs"), and shall indemnify and hold harmless the Company from and against any such Litigation Costs, provided, however, that:

> (a)     in the event the amount of the Commission due Montage under this Agreement minus all Litigation Costs incurred by Montage shall result in Montage recovering less than 30% of the gross recovery resulting from the collection, compromise, adjustment, pursuit, prosecution or other realization upon any of the Specified Assets ("Minimum Commission Recovery"), then the Company and Montage shall each bear one-half of any additional Litigation Costs incurred once the Minimum Commission Recovery is obtained by Montage; and

> (b)     in no event shall the Company be required to bear any additional Litigation Costs in excess of the Company's gross recovery with regard to any such Specified Asset, less the Minimum Commission Recovery paid with respect thereto.

Subject to the provisions of the sentence immediately preceding, if the Company shall be required to bear any portion of the Litigation Costs, it may elect either to continue existing litigation counsel in place or to substitute litigation counsel of its own choosing. Such counsel shall represent the interests of both the Company and Montage in any litigation, whether threatened or pending.

4.     ***Limitations on Certain Compromises, Adjustments and Settlements.*** Any provision contained in this Agreement to the contrary notwithstanding, absent the prior written consent of the Company, which consent may be granted or withheld in the sole discretion of the Company, Montage shall not compromise, adjust or otherwise settle the claim, cause of action or right of action associated with any Specified Asset if, as a result of any such compromise, adjustment or settlement, the Company will realize a gross recovery with regard to such Specified Asset that is less than 75% of the estimated gross recovery set forth on Exhibit B with regard to such Specified Asset.

5.     ***Termination.*** The Company may terminate this Agreement at any time, with or without cause, by delivering written notice (the "Termination Notice") of such termination to Montage. After the delivery of any such Termination Notice:

> (a)     Montage may, at its option (which shall be exercised within fifteen (15) business days of its receipt of the Termination Notice), deliver to the Company, by wire transfer of immediately available funds, an amount (the "Termination Fee") equal to the agreed value of each Specified Asset as to which the Company shall not have realized any recovery as of the date of such Termination Notice.  As used in this

paragraph, the term "agreed value" means the amount mutually determined by the Company and Montage as representing the fair market value of such Specified Asset;

(b)     the Company, in consideration of the Termination Fee (in the event that Montage exercises its option set forth in Section 5(a) above), shall execute and deliver to Montage an assignment in form and substance substantially similar to the form of assignment attached hereto as Exhibit C (the "Assignment"), pursuant to which the Company shall sell, assign, transfer and convey to Montage all of the Company's right, title and interest in and to the Specified Assets; and

(c)     Montage shall (in the event that Montage exercises its option set forth in Section 5(a) above) execute and deliver a waiver, in form and substance substantially similar to the form of waiver attached hereto as Exhibit D (the "Waiver"), pursuant to which Montage shall waive any claims, rights, defenses or causes of action, whether known or unknown, contingent or liquidated, against the Company.

Following the payment of the Termination Fee to the Company by Montage, the execution and delivery of the Assignment by the Company, and the execution and delivery of the Waiver by Montage, except as provided in Section 9 of this Agreement, neither the Company nor Montage shall have any further rights, duties or obligations under this Agreement. Notwithstanding anything to the contrary in the foregoing, if the Company terminates this Agreement pursuant to this Section 5, and Montage does not exercise its option to purchase the Specified Assets, the Company's obligation to pay Montage pursuant to Section 1(d) (in the event the Company subsequently takes action to collect, compromise, adjust, pursue, prosecute or otherwise realize upon the Specified Assets) shall survive such termination and shall remain in full force and effect.

6.     *Warranties and Representations of the Company.*  The Company makes the following representations and warranties to Montage:

(a)     *Organization.* The Company is a corporation duly organized and validly existing under the laws of the State of Delaware.

(b)     *Authorization; Powers.* The execution and delivery of this Agreement have been duly approved by the Company. No consent of any party to any contract or agreement to which the Company is a party or to which the transaction contemplated by this Agreement may be subject is required for the execution, delivery or performance of this Agreement. The Company has the corporate powers adequate for the execution, delivery, and performance of this Agreement and any other document necessary or convenient to the completion of the transaction set forth herein, and, upon entry of a final order by the Bankruptcy Court or other court of competent jurisdiction approving this Agreement, this Agreement and all documents entered into or executed incident to this Agreement shall constitute the valid and binding obligations of the Company enforceable in accordance with their respective terms.

(c)    **Commissions**. No third party has the right to any commission or other payment from the Company in connection with the transaction contemplated by this Agreement, other than Montage.

7.    **Warranties and Representations of Montage**. Montage hereby represents and warrants to the Company, which representations and warranties are made for the express purpose of inducing the Company to enter into this Agreement, as follows:

(a)    **Organization**. Montage is a limited liability company duly organized and validly existing under the laws of the State of Nevada.

(b)    **Authorization; Power**. The execution and delivery of this Agreement and the transactions contemplated herein have been duly approved by Montage. No consent of any party to any contract or agreement to which Montage is a party or to which the transaction contemplated by this Agreement may be subject is required for the execution, delivery or performance of this Agreement. Montage has the limited liability company powers adequate for the execution, delivery, and performance of this Agreement and any other document necessary or convenient to completion of the transaction set forth herein, and this Agreement and all documents entered into or executed incident to this Agreement shall constitute the valid and binding obligations of Montage enforceable in accordance with their respective terms.

(c)    **Affiliations**. Montage and its affiliates have no legal or economic interest in the Specified Assets and have no affiliation with, and are not acting on behalf of or in concert with, any party that has any potential liability to the Company in connection with any Specified Asset, or any party that is the subject of a cause of action or a claim in connection therewith.

(d)    **Compliance with Law**. In discharging its obligations hereunder, Montage will comply with all applicable federal, state and local laws, including, without limitation, all federal, state and local laws that govern or regulate the collection of debt and similar obligations.

8.    **Indemnity**.

(a)    Montage covenants and agrees to indemnify and hold harmless the Company and its officers, directors, employees, agents and affiliates, and any person that shall be entitled to receive any assets of the Company as a result of the liquidation of the Company pursuant to the terms of the Plan of Reorganization (collectively, the "Indemnitees"), from and against, and pay or reimburse the Indemnitees for, any and all liabilities, losses, claims, damages, punitive damages, causes of action, lawsuits, administrative proceedings (including informal proceedings), investigations, audits, demands, assessments, adjustments, judgments, settlement payments, deficiencies, penalties, fines, interest (including interest from the date of such damages) and costs and expenses (including without limitation reasonable attorneys' fees and disbursements of every kind, nature and description) (collectively, "Losses"), resulting from or arising out of:

(i)     the inaccuracy of any representation or warranty made by Montage herein;

(ii)     any failure of Montage to perform any covenant or agreement hereunder or to fulfill any other obligation in respect hereof; and

(iii)     any actions taken by Montage in connection with the collection, compromise, adjustment, pursuit or other realization upon any of the Specified Assets, including, without limitation, any Losses resulting from or arising out of any claims or counter-claims initiated against any of the Indemnities by any of the parties against which Montage shall have  initiated (or shall have threatened to initiate) any legal actions or proceedings with the view to collecting, compromising, adjusting, pursuing or otherwise realizing upon any of the Specified Assets.

(b)     In order for an Indemnitee to be entitled to any indemnification provided for under this Agreement in respect of, arising out of or involving a claim or demand made by any person or entity against the Indemnitee (a "Third Party Claim"), such Indemnitee must notify Montage in writing, and in reasonable detail, of the Third Party Claim promptly after receipt by such Indemnitee of written notice of the Third Party Claim; provided, however, that failure to give any notice required under this Section 8 shall not affect the indemnification provided hereunder except to the extent Montage shall have been actually prejudiced as a result of such failure.  Such notice shall state the nature and the basis of such Third Party Claim and, if estimable, a reasonable estimate of the amount thereof.  Thereafter, the Indemnitee shall deliver to Montage, promptly after the Indemnitee's receipt thereof, copies of all notices and documents (including court papers) received by the Indemnitee relating to any such Third Party Claim.

(c)     Montage shall have the right to defend and settle, at its own expense and by its own counsel (provided that such counsel is reasonably acceptable to the Indemnitee), any Third Party Claim; provided that, and for so long as, Montage pursues the same in good faith and diligently.  If Montage undertakes to defend or settle any such Third Party Claim, it shall promptly notify the Indemnitee of its intention to do so, and the Indemnitee shall cooperate with Montage and its counsel in the defense thereof and in any settlement thereof.  Notwithstanding the foregoing, the Indemnitee shall have the right to participate in any matter through counsel of its own choosing at its own expense (unless there is a conflict of interest that prevents counsel for Montage from representing the Indemnitee, in which case the Montage will reimburse the Indemnitee for the reasonable fees and expenses of its counsel).  Subject to the provisions of the sentence immediately preceding, after Montage has notified the Indemnitee of its intention to undertake to defend or settle any such Third Party Claim, and for so long as Montage diligently pursues such defense in good faith, Montage shall not be liable for any additional legal expenses incurred by the Indemnitee in connection with any defense or settlement of such asserted liability, except to the extent such participation is requested by Montage, in which event the Indemnitee shall be reimbursed by Montage for reasonable additional legal fees expenses.

(d)     Montage shall not, without the prior written consent of the Indemnitee, which consent may be granted or withheld in the sole discretion of the Indemnitee, effect the settlement or compromise of, or consent to entry of any judgment with respect to, any pending or threatened Third Party Claim in respect of which indemnification may be sought hereunder (whether or not the Indemnitee is an actual or potential party to such action or claim) unless such settlement, compromise or judgment (i) includes an unconditional release of the Indemnitee from all liability arising out of such Third Party Claim, (ii) does not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of any Indemnitee, and (iii) does not include any injunctive or non-monetary relief.

(e)     If Montage does not assume the defense of any Third Party Claim, then the Indemnitee may defend against such Third Party Claim in such manner as it reasonably deems appropriate at the expense of Montage.

(f)     Notwithstanding anything to the contrary in this Section 8 , if at any time, in the reasonable opinion of the Indemnitee (notice of which opinion shall be given in writing to Montage), any Third Party Claim seeks material, prospective, non-monetary relief against the Indemnitee, then such Indemnitee shall have the right to control or assume (as the case may be) the defense of any such Third Party Claim and the amount of any judgment or settlement and the reasonable costs and expenses of defense (including, but not limited to, fees and disbursements of counsel and experts) shall be included as part of the indemnification obligations of Montage hereunder. If the Indemnitee elects to exercise such right, then Montage shall have the right to participate in, but not control, the defense of such Third Party Claim at the sole cost and expense of Montage.

(g)     In the event an Indemnitee has an indemnification claim against Montage under this Agreement that does not involve a Third Party Claim being asserted against or sought to be collected from such Indemnitee, the Indemnitee shall deliver notice of such claim with reasonable promptness to Montage. The failure by any Indemnitee so to notify Montage shall not relieve Montage from any liability that it may have to such Indemnitee, except to the extent that Montage has been actually prejudiced by such failure. Such notice shall state the nature and the basis of such claim, and, if estimable, a reasonable estimate of the amount thereof. If Montage notifies the Indemnitee that it does not dispute the claim described in such notice or does not respond to such claim within 10 days of receipt thereof, the Loss arising from the claim specified in such notice will be conclusively deemed a liability of Montage and Montage shall pay the amount of such Loss to the Indemnitee on demand following the final determination thereof.

9.     *Nature and Survival of Representations*. All statements contained in any document or other instrument delivered by or on behalf of either party pursuant hereto, or in connection with the transaction contemplated hereby, shall be deemed representations and warranties by the party delivering the same. All representations, warranties, and agreements made by either party in this Agreement or pursuant hereto, including, without limitation, the

indemnification obligations of Montage under <u>Section 8</u> of this Agreement, shall survive the termination of this Agreement.

    10.    ***Miscellaneous Provisions.***

    (a)    ***Severability.*** If any provision of this Agreement shall be held invalid or unenforceable, such invalidity shall attach only to such provision and shall not affect or render invalid or unenforceable any other provisions of this Agreement, and this Agreement shall be construed as if such provision had been drawn so as not to be invalid or unenforceable.

    (b)    ***Integration.*** This Agreement and all other documents, instruments or agreements delivered pursuant to the terms hereof or in connection herewith contain a complete and exclusive statement of all the arrangements between the parties hereto and all prior negotiations, agreements, and understandings, written or oral, between the parties hereto are superseded by this Agreement.

    (c)    ***Notices.*** Any notice, demand, claim, or other communication under this Agreement shall be in writing and shall be made by hand delivery, facsimile, first-class mail (registered or certified mail, return receipt requested) or overnight courier warranting next-day delivery to the following addresses:

| If to Montage: | If to the Company: |
|---|---|
| Montage Partners LLC<br>2921 Via Alvarado<br>Palos Verdes Estates, California 90274<br>Attn: Larry Manth<br>Fax: 310-544-8334 | Primary PDC, Inc.<br>c/o Wind Down Associates LLC<br>Suite 183<br>2701 N. Rocky Point Drive<br>Tampa, Florida 33607<br>Attn: Mark S. Stickel<br>Fax: 813-286-2740 |
| With a copy to: | With a copy to: |
| Michael S. Rosenblum, Esq.<br>1875 Century Park East, Suite 700<br>Los Angeles, California 90067<br>Fax: 310-286-3010 | John Strickland<br>Akin Gump Strauss Hauer & Feld, LLP<br>300 W. 6th Street, Suite 2100<br>Austin, Texas 78701<br>Fax: 512-499-6290 |

All such notices and communications shall be deemed to have been duly given: at the time delivered by hand, if personally delivered; at the time of receipt, if delivered by facsimile; two business days after being deposited in the mail, postage prepaid, if mailed; and the next business day after timely delivery to the courier, if sent by overnight air courier warranting next-day delivery. Either party may change the address to which each such notice or communication shall be sent by giving written notice to the other party of such new address in the manner provided herein for giving notice.

(d)　***Assignment; Successors and Assigns***. Neither this Agreement nor any of the rights, duties or obligations of either party to this Agreement may be assigned or transferred, by operation of law or otherwise, absent the prior written consent of the other party hereto. The provisions and covenants contained herein shall inure to and be binding upon the permitted successors, transferees and assigns of the parties hereto.

(e)　***Section Headings***. The headings in this Agreement are solely for convenience of reference and shall not affect its interpretation.

(f)　***Copies***. This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.

(g)　***Governing Law***. This Agreement shall be construed in accordance with the laws of the State of Delaware, without giving effect to any provision thereof that would require the application of the substantive laws of any other jurisdiction.

(h)　***Amendment***. This Agreement may only be amended by a writing signed by each of the parties, and any term or provision of this Agreement may only be waived in a writing signed by the party to be charged with such waiver.

(i)　***Costs***. Each of the parties hereto shall bear its own expenses in connection with the negotiation, execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement. Such costs shall not be taken into account in calculating the Minimum Commission Recovery of Montage pursuant to Section 3 above.

(j)　***Good Faith***. Each of the parties hereunder will act in good faith and fairly deal with respect to the terms hereof and the performance of its obligations hereunder and nothing herein shall waive or be deemed to waive such requirements.

(k)　***Enforcement; Jurisdiction***. The parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached, for which monetary damages would not be an adequate remedy, and accordingly, each party agrees that the other party shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to any other remedy to which the parties are entitled at law or in equity. Any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby may be brought in the Bankruptcy Court, and each of the parties hereby consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.

Process in any such suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court. Without limiting the foregoing, each party agrees that service of process on such party as provided in <u>Section 10(c)</u> shall be deemed effective service of process on such party.

(l)     ***Waiver of Jury Trial.*** EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

(m)     ***Bankruptcy Court Approval.*** This Agreement is subject to the entry of a final order by the Bankruptcy Court or other court of competent jurisdiction and shall not be enforceable against the Company until such a final order is entered.

**THIS SPACE INTENTIONALLY LEFT BLANK**
**THE NEXT PAGE IS THE EXECUTION PAGE**

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement on the date first above written.

MONTAGE PARTNERS, LLC,

A Nevada Limited Liability Company

By: _____
Larry Manth
Managing Member

**PRIMARY PDC, INC.**

A Delaware Corporation

By: _____
Mark S. Stickel
President

## EXHIBIT A

### Retained Assets

The following assets, properties, and rights constitute the Retained Assets::

      (a)     all Contracts other than Assumed Contracts;

      (b)     100% of the shares of the outstanding capital stock or other Equity Interests of each Subsidiary of Polaroid listed in Section 2.02(b) of the Disclosure Schedule;

      (c)     all personnel records and other Books and Records that any Seller is required by Law to retain in its possession;

      (d)     (i) all causes of action, judgments, Claims and demands of any nature available to or being pursued by any Seller against Third Parties, whether choate or inchoate, known or unknown, contingent or otherwise, to the extent the foregoing relate to or arise out of the Excluded PDC Assets or the Excluded Liabilities and (ii) all causes of action, judgments, Claims and demands of any nature available to or being pursued by any Seller against (A) any Representative of any Seller, or (B) any supplier or vendor to any Seller, or (C) any Third Party insurance, reinsurance, bonding or other similar company providing insurance to the Sellers other than with respect to causes of action, judgments, Claims and demands against Representatives, suppliers or vendors described in clause (A), (B) or (C) below, including all such causes of action, choses in action and rights of recovery actions for preferences, fraudulent conveyances, and other avoidance power claims and any recoveries under sections 506(c), 542, 544, 545, 547, 548, 549, 550, 552(b) and 553 of the Bankruptcy Code and the proceeds, products, rents and profits of all of the foregoing, but only if such Representative, supplier or vendor is not a director, officer, employee or agent of, or consultant, supplier, vendor or contractor to, the Business (A) whose relationship with the Business continues immediately following the Closing Date or (B) who has been hired, retained or engaged by the Purchaser of any of its Affiliates within sixty (60) days after the Closing Date or (C) who, at the end of such sixty (60) day period, is reasonably expected to have or resume such a continuing relationship with the Business after such sixty (60) day period;

      (e)     all rights of any Seller under this Agreement and the Ancillary Agreements;

      (f)     except as provided in Section 2.01(bb), all rights of Sellers, including Polaroid and Polaroid ID, under the Digimarc Asset Purchase Agreement;

      (g)     any intercompany receivables of any Seller held by another Seller;

      (h)     prepaid expenses of Sellers relating to debt financing costs;

      (i)     non-current or other assets related to the Polaroid Pension Pan; and

      (j)     any Retained Related Party Accounts Receivable.

      Capitalized terms used in this Exhibit A shall have the meanings assigned to such terms in the Asset Purchase Agreement.

# EXHIBIT B

## Specified Assets

**Description of Specified Asset**                    **Estimated Gross Recovery**

## EXHIBIT C

## Form of Assignment

THIS ASSIGNMENT is made, executed and delivered as of this ___ day of _____, 2006 (the "Assignment"), by Primary PDC, Inc., a Delaware corporation (the "Company"), to Montage Partners LLC, a Nevada limited liability company ("Montage").

## WITNESSETH:

WHEREAS, the Company and Montage have entered into that certain Contingent Fee Engagement Agreement, dated as of April [●], 2006 (the "Agreement");

WHEREAS, capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in the Agreement; and

WHEREAS, the parties desire to carry out the intent and purpose of the Agreement by the Company's execution and delivery to Montage of this Assignment, evidencing the vesting in Montage of the Specified Assets, subject to the provisions of the Agreement.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. As of the date hereof, the Company hereby assigns, conveys and transfers unto Montage, its successors and assigns forever, all of the Company's right, title and interest in and to the Specified Assets.

Section 2. The Company hereby covenants that, from time to time after delivery of this Assignment at the reasonable request of Montage and at Montage's sole cost and expense, the Company shall take such steps as may be reasonably necessary or appropriate so that Montage shall be placed in actual possession and operating control of the Specified Assets.

Section 3. Nothing in this Assignment, express or implied, is intended or shall be construed to confer upon, or give to, any person other than Montage and its successors and assigns, any remedy or claim under or by reason of this Assignment or any terms, covenants or conditions hereof, and all the terms, covenants and conditions, promises and agreements contained in this Assignment shall be for the sole and exclusive benefit of Montage and its successors and assigns.

Section 4. This Assignment shall be binding upon the Company and Montage and their respective successors and assigns, effective immediately upon its delivery to Montage.

Section 5. Nothing contained in this Assignment shall in any way supersede, modify, replace, amend, change, rescind, expand, exceed or enlarge or in any way affect the provisions, including the warranties, covenants, agreements, conditions, or in general, any rights and remedies, and any of the obligations of the Company or Montage set forth in the Agreement.

Section 6. This Assignment shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the substantive laws of the State of Delaware, without giving effect to any provision thereof that would require the application of the substantive laws of any other jurisdiction, except to the extent that such laws are superseded by the Bankruptcy Code.

Section 7. Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Assignment and to decide (insofar as they relate to the Company) any claims or disputes which may arise or result from, or be connected with, this Assignment, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

Section 8. This Assignment may not be amended, supplemented or modified except by an instrument in writing signed by each of the parties hereto.

Section 9. This Assignment may be executed in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Counterparts to this Assignment may be delivered by facsimile. In proving this Assignment, it shall not be necessary to produce or account for more than one such counterpart signed by the party against whom enforcement is sought.

Section 10. **THE SPECIFIED ASSETS ARE BEING SOLD ON AN "AS IS," "WHERE IS" BASIS AND THE COMPANY MAKES NO WARRANTIES, INCLUDING MERCHANTABILITY, FITNESS OR OTHERWISE, WITH RESPECT TO THE SPECIFIED ASSETS.**

[*Signature page follows*]

IN WITNESS WHEREOF, the Company and Montage have caused this Assignment to be executed as of the date first written above by their respective officers thereunto duly authorized.

PRIMARY PDC, INC.

By: _____
       Mark S. Stickel
       President

MONTAGE PARTNERS, LLC

By: _____
       Larry Manth
       Managing Member

**EXHIBIT D**

**Form of Waiver**

[Date]

Primary PDC, Inc.
c/o Wind Down Associates LLC
Suite 183
2701 N. Rocky Point Drive
Tampa, Florida 33607
Attn: Mark S. Stickel

Ladies and Gentlemen:

We refer to that certain Contingent Fee Engagement Agreement, dated as of April [•], 2006 (the "Agreement"), by and between Montage Partners, LLC ("Montage") and Primary PDC, Inc. (the "Company").

This letter is written to you pursuant to Section 5(c) of the Agreement, and in connection with the exercise by Montage of its option under Section 5(a) of the Agreement.

Montage, on its behalf and on the behalf of its members, managers, officers, employees, agents, affiliates and other representatives (collectively, the "Montage Parties"), does hereby finally, unconditionally, irrevocably, and absolutely release, acquit, remise, and forever discharge Primary PDC, Inc. and Wind Down Associates, LLC and each of their respective stockholders, directors, officers, members, managers, employees, agents, affiliates and other representatives (collectively, the "Released Parties"), from and against any and all accounts, agreements, avoidance actions, bills, bonds, causes, causes of action, charges, claims, complaints, contracts, controversies, costs, counterclaims, damages, debts, demands, equitable proceedings, executions, expenses, legal proceedings, liabilities, losses, matters, objections, obligations, orders, proceedings, reckonings, remedies, rights, setoff, suits, sums of money, of any kind, at common law, statutory or otherwise, whether known or unknown, whether mature or unmatured, whether absolute or contingent, whether direct or derivative, whether suspected or unsuspected, whether liquidated or unliquidated, whether existing or arising as of the date of this letter or hereafter, including but not limited to, breach of contract, breach of any special relationship, breach of duty of care, breach of duty of loyalty, breach of fiduciary duty, concealment, conflicts of interest, conspiracy, course of conduct or dealing, debt recharacterization, deceit, deceptive trade practices, deepening insolvency, defamation, control, disclosure, duress, economic duress, equitable subordination, fraud, fraudulent conveyance, fraudulent transfer, gross negligence, insolvency law violations, interference with contractual and business relationships, misrepresentation, misuse of insider information, negligence, obligation of fair dealing, obligation of good faith and fair dealing, obligation of good faith, preference, secrecy, securities and antitrust laws violations, substantive consolidation, tying arrangements, unconscionability,

usury, violations of statutes and regulations of governmental entities, instrumentalities and agencies, wrongful recoupment or setoff, or any tort, whether common law, statutory or in equity, (collectively, the "Claims"), including without limitation, Claims connected with or relating to, or resulting from, based upon or arising out of the Agreement or the transactions effected pursuant thereto, which Montage or any of the other Montage Parties may have had, may now have or may have in the future, directly, indirectly or derivatively, against any or all of the Released Parties.

Very truly yours,

MONTAGE PARTNERS, LLC

By: _____

Larry Manth
Managing Member